EXHIBIT A

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

<table>
<tr><td>

**NOTICE TO DEFENDANT:** TESLA, INC., a corporation; and DOES 1 through 50,
**(AVISO AL DEMANDADO):** inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:** IKE AMUZIE, an individual,
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**

</td><td>

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California
County of Alameda
10/15/2025
Chad Finke, Executive Officer / Clerk of the Court
By: _____ M. Moore Jr. _____ Deputy

</td></tr>
</table>

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

<table>
<tr><td>

The name and address of the court is:
(El nombre y dirección de la corte es):
Superior Court of California, County of Alameda
Hayward Hall of Justice, 24405 Amador Street, Hayward, California 94544

</td><td>

CASE NUMBER:
(Número del Caso):
**25CV149013**

</td></tr>
</table>

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Matthew J. Matern, Esq.; Joshua D. Boxer, Esq.
Matern Law Group, PC, 2101 E. El Segundo Blvd, Suite 403, El Segundo, CA 90245, (310) 531-1900

DATE: 10/15/2025                                         Clerk, by _____ , Deputy
(Fecha)     Chad Finke, Executive Officer / Clerk of the Court     (Secretario)        M. Moore Jr.        (Adjunto)

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☑ on behalf of (specify): **TESLA, INC., a corporation**

under: ☑ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov
Westlaw Doc & Form Builder™

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Matthew J. Matern; Joshua D. Boxer    SBN: 159798; 226712
Matern Law Group, PC
2101 E. El Segundo Blvd, Suite 403, El Segundo, CA 90245
TELEPHONE NO.: (310) 531-1900    FAX NO.: (310) 531-1901
EMAIL ADDRESS: JBoxer@maternlawgroup.com
ATTORNEY FOR *(Name):* Ike Amuzie

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
10/15/2025 at 12:21:04 PM
By: Michael Moore Jr.,
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
 STREET ADDRESS: 24405 Amador Street
 MAILING ADDRESS: 24405 Amador Street
 CITY AND ZIP CODE: Hayward, California 94544
 BRANCH NAME: Hayward Hall of Justice

CASE NAME: Ike Amuzie v. Tesla, Inc.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [X] Unlimited  [ ] Limited | [ ] Counter  [ ] Joinder | **25CV149013** |
| (Amount demanded exceeds $35,000) | (Amount demanded is $35,000 or less) | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: |
|  |  | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[X] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. [ ] Large number of separately represented parties
b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. [ ] Substantial amount of documentary evidence
d. [ ] Large number of witnesses
e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary  b. [X] nonmonetary; declaratory or injunctive relief  c. [X] punitive
4. Number of causes of action *(specify):* Four (4)
5. This case [ ] is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: 10/15/2025

Joshua D. Boxer
(TYPE OR PRINT NAME)    ▶    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2024]    **CIVIL CASE COVER SHEET**    Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET                         CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
   Damage/Wrongful Death
Uninsured Motorist (46) *(if the
   case involves an uninsured
   motorist claim subject to
   arbitration, check this item
   instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death) Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/
     Wrongful Death
Product Liability *(not asbestos or
   toxic/environmental)* (24)
Medical Malpractice (45)
   Medical Malpractice–
     Physicians & Surgeons
   Other Professional Health Care
     Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip
     and fall)
   Intentional Bodily Injury/PD/WD
     (e.g., assault, vandalism)
   Intentional Infliction of
     Emotional Distress
   Negligent Infliction of
     Emotional Distress
   Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
   Practice (07)
Civil Rights (e.g., discrimination,
   false arrest) *(not civil
   harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice
     *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease
     Contract *(not unlawful detainer
     or wrongful eviction)*
   Contract/Warranty Breach–Seller
     Plaintiff *(not fraud or negligence)*
   Negligent Breach of Contract/
     Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open
   book accounts) (09)
   Collection Case–Seller Plaintiff
   Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally
   complex)* (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
   Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property *(not eminent
     domain, landlord/tenant, or
     foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
   drugs, check this item; otherwise,
   report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court
     Case Matter
   Writ–Other Limited Court Case Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor Commissioner
     Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
   *(arising from provisionally complex
   case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic
   relations)*
Sister State Judgment
Administrative Agency Award
   *(not unpaid taxes)*
Petition/Certification of Entry of
   Judgment on Unpaid Taxes
Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
   Declaratory Relief Only
   Injunctive Relief Only *(non-
     harassment)*
   Mechanics Lien
   Other Commercial Complaint
     Case *(non-tort/non-complex)*
   Other Civil Complaint
     *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
   Governance (21)
Other Petition *(not specified above)* (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief From Late Claim
   Other Civil Petition

Westlaw Doc & Form Builder

**MATERN LAW GROUP, PC**
Matthew J. Matern (SBN 159798)
Email: mmatern@maternlawgroup.com
Joshua D. Boxer (SBN 226712)
Email: jboxer@maternlawgroup.com
2101 E. El Segundo Blvd., Suite 403
El Segundo, California 90245
Telephone: (310) 531-1900
Facsimile: (310) 531-1901

Attorneys for Plaintiff
IKE AMUZIE

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
10/15/2025 at 12:21:04 PM
By: Michael Moore Jr.,
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA – UNLIMITED JURISDICTION

| | |
|---|---|
| IKE AMUZIE, an individual,<br><br>        Plaintiff,<br><br>vs.<br><br>TESLA, INC., a corporation; and DOES 1 through 50, inclusive,<br><br>        Defendants. | CASE NO.: 25CV149013<br><br>**COMPLAINT**<br><br>1. Racial Harassment (Cal. Gov't Code § 12940(j));<br>2. Race Discrimination (Cal. Gov't Code § 12940(a));<br>3. Retaliation for Opposing Racial Discrimination and Harassment (Cal. Gov't Code § 12940(h));<br>4. Failure to Prevent Racial Discrimination, Harassment, or Retaliation (Cal. Gov't Code § 12940(k));<br><br>**DEMAND FOR JURY TRIAL** |

## NATURE OF THE ACTION

1.    Plaintiff IKE AMUZIE ("PLAINTIFF") an individual, demanding a jury trial, brings this action against Defendants TESLA, INC. ("TESLA"), and DOES 1 through 50, inclusive (collectively, "DEFENDANTS") to remedy DEFENDANTS' employment practices and policies of racial harassment, discrimination, retaliation for opposing race discrimination and harassment, failure to prevent discrimination and harassment, wrongful termination in violation of public policy, and intentional infliction of emotional distress. PLAINTIFF seeks compensatory damages, punitive damages, injunctive relief, any applicable interest, and reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

2.    The Superior Court of the State of California has jurisdiction in this matter because at all relevant times herein TESLA conducted or conducts business in California. Additionally, PLAINTIFF performed work for DEFENDANT in California. Further, no federal question is at issue because the claims are based solely on California law.

3.    Venue is proper in this judicial district and the County of Alameda, California because PLAINTIFF performed work for DEFENDANT in the County of Alameda, DEFENDANT transacts or transacted business in the County of Alameda, and because DEFENDANTS' discriminatory and illegal acts, policies, and practices that are the subject of this action occurred or were applied, at least in part, in the County of Alameda.

## PLAINTIFF

4.    PLAINTIFF is an African-American male and a former employee of DEFENDANT TESLA. PLAINTIFF was employed by DEFENDANT TESLA as a production associate between September 2012 and around August 27, 2021 in Fremont, California in the County of Alameda. He was, at all relevant times, a resident of the State of California.

## DEFENDANTS

5.    TESLA is a vehicle manufacturer that designs and manufactures automobiles that are sold nationwide. TESLA engages manufacturer technicians, such as PLAINTIFF, to complete its essential business function of manufacturing vehicles.

6.    PLAINTIFF is informed and believes, and thereon alleges, that TESLA is, and at all times relevant hereto was, a corporation that operates under the laws of the State of California. PLAINTIFF is further informed and believes, and thereon alleges, that TESLA conducts business in the State of California. Specifically, upon information and belief, TESLA conducts or conducted business in, and engages or engaged in unlawful acts in, the County of Alameda, State of California, where PLAINTIFF worked, and where the unlawful conduct occurred.

7.    TESLA is an employer within the meaning of Cal. Gov't Code §§ 12926 and 12940 and regularly employs five (5) or more persons and is therefore subject to the jurisdiction of this court.

8.    The true names and capacities of DOES 1 through 50, inclusive, are unknown to PLAINTIFF at this time, and PLAINTIFF therefore sues such DOE Defendants under fictitious names.    PLAINTIFF is informed and believes, and thereon alleges, that each Defendant designated as a DOE is in some manner highly responsible for the occurrences alleged herein, and that PLAINTIFF'S injuries and damages, as alleged herein, were proximately caused by the conduct of such DOE Defendants.    PLAINTIFF will seek leave of the court to amend this Complaint to allege their true names and capacities of such DOE Defendants when ascertained.

9.    PLAINTIFF is informed and believes, and thereon alleges, that each and every one of the acts and omissions alleged herein were performed by, and/or attributable to, all DEFENDANTS, each acting as agents and/or employees, and/or under the direction and control of, each of the other DEFENDANTS, and that said acts and failures to act were within the course and scope of said agency, employment and/or direction and control.

10.    As a direct and proximate result of the unlawful actions of DEFENDANTS, PLAINTIFF has suffered, and continues to suffer, from loss of earnings in amounts as yet unascertained, but subject to proof at trial, and within the jurisdiction of this Court.

## EXHAUSTION OF REMEDIES

11.    PLAINTIFF has fully exhausted all applicable administrative remedies and received his Right to Sue notice from the California Department of Fair Employment and Housing on or about January 30, 2025.

**FACTUAL ALLEGATIONS**

12.     PLAINTIFF is an African-American male with a Bachelor degree in Chemical Engineering and a Master of Business Administration degree.

13.     In September 2012, PLAINTIFF began working for TESLA as a temporary employee. In or around August 2013, PLAINTIFF became a permanent employee in the role of a Production Associate.

14.     DEFENDANTS discriminated against and harassed PLAINTIFF on the basis of his race throughout his employment.

15.     PLAINTIFF consistently heard offensive words, including "Nigger," being used on a daily basis by TELSA employees while working on the line. PLAINTIFF also saw offensive words like "Nigger" and racist graffiti written on the bathroom stalls.

16.     In addition to the pervasive use of racially harassing language at TESLA, PLAINTIFF has observed that, when it comes to work opportunities, assignments, and discipline, African-American workers are treated in an inferior manner to non-African-American employees. PLAINTIFF has observed that African-American employees are rarely promoted to Lead, Supervisor or Management, and are not given the same promotion opportunities as non-African-American employees, while being disciplined, and terminated more frequently than non-African-American employees.

17.     PLAINTIFF recalls overhearing a TESLA Lead telling a Production Associate "Stay away from these black people," in reference to PLAINTIFF and other African-American employees working on the production line.

18.     On April 29, 2014, PLAINTIFF met privately with Cory Andrews, PLAINTIFF'S non-African-American supervisor, to discuss his application for the role of a Project Manager. PLAINTIFF had six months' tenure at TESLA and sought guidance regarding internal career opportunities aligned with his skills. PLAINTIFF had additionally reached out to Milo Werner, a non-African-American manager, and Ashleigh Nebeker, a non-African American manager, about the role of a Materials Planner after PLAINTIFF'S resume was personally forwarded and recommended by Peter Hasenkamp. After this meeting, PLAINTIFF was directed by Werner to

1    meet with Dr. Parks. PLAINTFF had mentioned this to Andrews in the hope that he would be

2    able to speak on PLAINTFF'S behalf. However, Andrews mentioned he did not know Parks well

3    enough. This resulted in PLAINTFF being told by Christine Whitehill, a non-African American

4    HR Business Partner, that the series of communications with Parks were not being received well

5    and that PLAINTIFF would no longer have a job at TESLA if PLAINTIFF'S efforts continued.

6    PLAINTIFF moved on quickly and apologized to Parks, emphasizing PLAITIFF'S intentions of

7    gaining clarity about the potential position in Parks' department for the role of a Project Manager.

8    PLAINTIFF was later told by Cory Andrews that PLAINTIFF was forbidden from approaching

9    hiring managers. PLAINTIFF was discouraged from advocating for himself and obstructed

10   PLAINTIFF from fair career advancement.

11       19.    On January 8, 2018, Brandon Parker, PLAINTIFF's supervisor, directly

12   recommended him to Hrushikesh Sagar, a Indian senior manager, for the role of a Production

13   Controller. Parker added in the email why PLAINTIFF should be chosen for the role and how the

14   role requirements align with PLAINTIFF'S background. Parker emphasized the strength in

15   PLAINTIFF'S application by stating, "…he is reliable, a strong performer, and has a keen

16   aptitude of attention to details that bring daily value to our Team & efforts…he would make a

17   solid addition to PC team."

18       20.    On January 9, 2018, PLAINTIFF received a text message at 1:44 a.m. from Sagar,

19   inviting PLAINTIFF to attend an interview after his shift. PLAINTIFF interviewed later that day

20   at around 6:10 a.m.

21       21.    On January 11, 2018, PLAINTIFF sent a text message to the Sagar thanking him

22   for his time and to reiterate that PLAINTIFF'S skills complement the requirements for the

23   position.

24       22.    On May 1, 2018, PLAINTIFF sent another text message to the Sagar for an update

25   regarding the position.  PLAINTIFF was told he would receive an update on the same day.

26   PLAINTIFF instead received an update three days later.

27       23.    On May 4, 2018, Sagar sent an email to PLAINTIFF stating, "…Considering

28   complexity of Model 3 operations and unstable processes, I decided not to hire to Techs and go

5                                                                      COMPLAINT

for controller...." This was a surprise to PLAINTIFF, as he had been directly recommended by his supervisor. PLAINTIFF later discovered that TESLA instead hired Saketh Vinnakota, a new, Indian external employee. Vinnakota was a recent college graduate with less experience than PLAINTIFF, who had various leadership roles where he led cross-functional teams in technical and manufacturing environments, consistently driving efficiency, optimizing workflows, and maintaining high inventory accuracy.

24.    Vinnakota was promoted to Senior Production Controller less than two years later.

25.    On or around November 14, 2018, PLAINTIFF met with Jatinder Dhillon, an Indian director, where he vowed that no manager at Tesla would ever offer PLAINTIFF a professional job. DHILLON declared that he would not offer PLAINTIFF a job even if it was as a Technician. PLAINTIFF never heard him make such comments to a non-African-American employee. PLAINTIFF complained about what happened during this interaction on or around September 4, 2019, in a private meeting with Oliver Hsu, a non-African-American HR Business Partner.

26.    On August 20, 2019, PLAINTIFF received an email from Jerome Guillen, a non-African-American executive manager, congratulating him on the sixth anniversary of his full-time employment at TESLA. Later this same day, PLAINTIFF requested to meet with Guillen in light of his supportive email. Guillen responded via email saying he would not be able to meet due to time constraints. PLAINTIFF was redirected to meet with his senior managers. PLAINTIFF had continuously been a high performing TESLA employee and only after reaching out to Guillen did PLAINTIFF begin to receive performance warnings.

27.    On September 4, 2019, PLAINTIFF met privately with Hsu. PLAINTIFF was under the impression this meeting was prompted by his email conversation with Guillen the prior month. PLAINTIFF explained that his career development had been stalled due to a lack of opportunities, as compared to non-African-American employees, notwithstanding that his skills and experiences aligned with the requirements. PLAINTIFF requested a career advancement opportunity on a level-playing field to address some of the discriminatory employment practices against him. PLAINTIFF was then asked to provide a list of his job applications on file.

28.    On September 9, 2019, PLAINTIFF provided the requested list to the HR Business Partner.

29.    On September 10, 2019, PLAINTIFF was connected with Candace Madriz, a non-African-American recruiter who was responsible for the supply chain jobs from PLAINTIFF'S list.

30.    On October 28, 2019, PLAINTIFF learned that the role of a Production Controller, which he previously interviewed for in January 2018, went to a non-African-American employee, even though PLAINTIFF and Sagar previously agreed PLAINTIFF would apply to the role.

31.    PLAINTIFF eventually interviewed for a second time on January 22, 2020 for the Production Controller Technician role. However, Saketh Vinnakota, the Indian employee that was hired in January 2018 instead of PLAINTIFF, told PLAINTIFF he *was not even being considered* for the role because internal candidates have to go from one Production Associate level to others before getting to a Production Controller role. Meanwhile, external candidates like Vinnakota do not have to go through this process, contradicting GUILLEN's statement that "internal candidates should be heavily favored" for new job opportunities at TESLA.

32.    On November 20, 2019, PLAINTIFF had an onsite interview with senior manager, Tara Lucier, for the role of "CapEx Global Supply Manager." On November 21, 2019, PLAINTIFF was told by the recruiter that he needed a transitional role before he could qualify for this CapEx role, even though it had been coordinated by the recruiter. On the same day, PLAINTIFF emailed back to ask if the role of a Supplier Industrialization Engineer, which PLAINTIFF previously applied for, qualified as a part of the transitional job. Lucier emailed PLAINTIFF, stating he was not qualified for this role either. PLAINTIFF later had a call with a Supply Chain recruiter, Candace Madriz, where she informed PLAINTIFF that he was not qualified for *any jobs in supply chain*. PLAINTIFF was not provided with an explanation as to why he was not qualified for any supply chain job at TESLA. PLAINTIFF'S resume, work experience at TESLA, skills and qualifications met the requirements for most of the jobs in supply chain.

33.    On November 27, 2019, PLAINTIFF received an email from the senior manager

stating that, based on the interview for the role of a CapEx Global Supply Manager, PLAINTIFF did not demonstrate depth of experience in negotiating complex commercial terms for TESLA. The role of a CapEx Global Supply Manager was later filled around January 2020 by Roshan Shankar, an Indian employee who had only a year of tenure at TESLA, shortly after recently attaining his engineering degree. Shankar also had minimal experience, which primarily consisted of internships and co-op positions, while PLAINTIFF had extensive manufacturing experience including CapEx roles in Sales and Procurement, Direct Materials and Services, as well as four years as a Global Supply Chain Manager at Cooper Industries, a Certified Purchasing Manager (CPM) certification from the Institute of Supply Management, and aided IBM in achieving $10M of cost savings in capital equipment tool procurement and $1M of cost savings in reduction of excess inventory as a Procurement Program Manager/Advisory Engineer for the Technology Division at IBM.

34.     On or around December 4, 2019, PLAINTIFF sent an inquiry to the HR Business Partner, Oliver Hsu, who initially connected PLAINTIFF with the Supply Chain recruiter, Candace Madriz. PLAINTIFF expressed his concerns regarding the recruiter's claim that PLAINTIFF was not qualified for a role in supply chain. Oliver Hsu then inquired with Candace Madriz about this as well. To date, PLAINTIFF and Hsu never received a response from Madriz.

35.     On or around December 16, 2019, PLAINTIFF suggested to senior manager, Tara Lucier, an opportunity to explore a more effective interview format, where PLAINTIFF would share a slideshow presentation of a capital equipment purchase project that included technical and commercial reviews from his previous similar employment experience.

36.     On or around January 7, 2020, PLAINTIFF attended his second interview for the role of a CapEx Global Supply Manager. PLAINTIFF was told by the same senior manager, Tara Lucier, that the slideshow presentation did not change the decision regarding promoting PLAINTIFF. She stated she had doubts about PLAINTIFF'S ability to keep up with the pace of the job. This shocked PLAINTIFF considering his previous experience in different CapEx roles at fast-paced organizations like IBM and Lam Research. She also stated what he described in the slideshow presentation was focused on technical reviews, even though PLAINTIFF disclosed in

his initial request for a second interview that the technical reviews would be featured since they are usually focal points of capital contracts. The job instead went to the Indian employee previously mentioned, Roshan Shankar.

37.    On January 15, 2020, PLAINTIFF sent another email to Tara Lucier, asking to be reconsidered for the role of a CapEx Global Supply Manager, to identify an alternative job that could be recommended for PLAINTIFF, and to provide an explanation regarding the inadequacies of PLAINTIFF'S slideshow interview. PLAINTIFF never received a response from Lucier.

38.    On February 18, 2020, PLAINTIFF sent a complaint letter via email to Guillen regarding two roles he was rejected for, Production Controller and Global Supply Manager. PLAINTIFF provided a detailed explanation of the discrimination and various roadblocks he experienced from TESLA in his career development at every turn. PLAINTIFF described the multiple meetings with senior management and the lack of explanation or guidance as to why PLAINTIFF did not qualify for roles which he previously held prior to his time at TESLA.

39.    Rather than investigating this complaint of discrimination, PLAINTIFF received a written performance warning from Matt Dybas, PLAINTIFF'S supervisor, *the very same day*. The warning concerned an issue involving lunch shutdown practices. Although there were three other Production Associates that were involved, PLAINTIFF, the only African-American of the group, was targeted for this disciplinary action.

40.    On March 4, 2020, Guillen sent an email to Sagar and PLAINTIFF. Guillen asked Sagar to review PLAINTFF's letter that was privately sent to Guillen on February 18, 2020, directly going against PLAINTIFF'S wishes. PLAINTIFF initially asked Guillen to review the decisions being made as he was being treated unfairly by non-African-American employees. Guillen stated this was regarding "potentially extra huddle for internal candidate." Guillen also addressed PLAINTIFF in this email, stating, "It seems to me that Candace and Tara followed the right steps and treated you fairly." Sagar responded to Guillen's email, providing "updates" to the discrimination and harassment described in PLAINTIFF'S letter. Sagar addressed Guillen and stated, "I was looking for the operations control technician. I remembered him and personally

called him to interview with one of my controller. On Jan 22nd 2020, Saketh talked with him about the position. It looks like there was a clear confusion over the position." However, PLAINTIFF was the one who initiated communication with Sagar in response to Guillen's weekly employment directives that "internal candidates are highly preferred." It was then Sagar who switched PLAINTIFF'S candidacy from Production Controller to Production Controller Technician without prior notice to PLAINTFF. Sagar then specifically addresses PLAINTIFF, stating, "Operation control center is a team of individuals which monitor the factory 24 by 7 here in Reno. Considering the complexity in operations, we start the team member with technician and eventually they grow into role as controller," even though the job description and qualifications provided to PLAINTIFF by Sagar did not state that applicants must hold a prerequisite TESLA role to be considered. Sagar goes on to mention four non-African-American Production Technician employees—Jenni Chan, Cindy Pina, Gurjot Singh, and Micah Daniels— that have worked their way up, however, those candidates did not apply via the same route as PLAINTIFF. Sagar explained how these Production Technicians "joined as technicians… and got promoted based on their exceptional performance." Yet these Production Technicians were promoted by TESLA within a year or less, whereas PLAINTIFF'S continued interested in advancement continued to be disregarded even though PLAINTIFF was a high performing employee.

41.    On July 5, 2020, Guillen again disregarded PLAINTIFF and redirected him to speak with an HR Business Partner instead.

42.    On August 31, 2020, PLAINTIFF sent an email to a second, non-African-American HR Business Partner, Jeremy Alinea, providing a detailed explanation of the harassing and discriminatory practices PLAINTIFF has experience in the last year, including being rejected for any promotional opportunity even though PLAINTIFF'S qualifications and skills aligned with the requirements. PLAINTIFF detailed how he continually sought help from Guillen to receive fair promotional opportunities at TESLA, but was continually passed over for promotions time and time again, with the jobs going to non-African-American employees. He explained how, on two occasions, positions he applied for, Production Controller and CapEx Global Supply

Manager, were given to non-African-American candidates with less experience than PLAINTIFF. PLAINTIFF also provided multiple communications between PLAINTIFF and senior management dated November 27, 2019, January 15, 2020, February 18, 2020, March 4, 2020, and July 3, 2020.

43.    On October 6, 2020, PLAINTIFF met with a third, also Indian, HR Business Partner, Shagun Ahluwalia, who informed PLAINTIFF that TESLA would be conducting an investigation into PLAINTIFF'S complaint. Later this same day, Ahluwalia sent an email to PLAINTIFF, explaining she would review the documents PLAINTIFF shared and "connect with the management teams involved in evaluation your internal applications and interview process to better under the rationale used." She also stated PLAINTIFF'S "manager" would be aware of their meeting.

44.    Just two days after this meeting about PLAINTIFF'S discrimination and harassment complaint, on October 8, 2020, PLAINTIFF received a final written performance warning from Clayton Desair, PLAINTIFF'S non-African American supervisor, regarding an issue with a roof glass that was not installed correctly and resulted in an accident in the field. However, PLAINTIFF did not install the roof glass, was not responsible for the roof glass, and was not even authorized to install roof glass. This was a direct retaliation to PLAINTIFF'S complaints.

45.    Undeterred by this pattern of retaliation, on November 18, 2020, PLAINTIFF applied for a second time to the role of a CapEx Global Supply Manager. He was again denied.

46.    On December 7, 2020, Ahluwalia sent PLAINTIFF a final report of her findings, in which she asserted that TESLA did not make a mistake in any hiring decisions. This is the same person who previously told PLAINTIFF, on October 17, 2020, that TESLA has the right to make hiring decisions at their discretion and that she disagreed with even allowing PLAINTIFF to have the second interview where he had a slideshow presentation.

47.    On July 12, 2021, PLAINTIFF applied for a third time to the role of a CapEx Global Supply Manager. Again, PLAINTIFF was denied this promotion.

48.    On August 27, 2021, the degrading conditions at TESLA became so unbearable

1   PLAINTIFF was forced to submit a resignation letter, effective September 10, 2021, once more

2   expressing the constant racial harassment and discrimination he endured on multiple occasions.

3   PLAINTIFF continued to state how he lived in fear of constant retaliation from TESLA for

4   almost two years.

**FIRST CAUSE OF ACTION**

**Hostile Work Environment – Racial Harassment in Violation of the**

**California Fair Employment and Housing Act**

**[Cal. Gov't Code § 12940(j)]**

**(Against All DEFENDANTS and DOES 1 through 50)**

49.     PLAINTIFF incorporates herein by specific reference, as though fully set forth, the

factual allegations in the foregoing paragraphs.

50.     At all relevant times herein, California Government Code § 12940 was in full

force and effect and was binding on DEFENDANTS.

51.     As set forth above, DEFENDANTS' acts and omissions constitute violations of

California Government Code § 12940. PLAINTIFF has timely filed a complaint against

DEFENDANTS with the California Department of Fair Employment and Housing and received a

Right to Sue letter on January 30, 2025.

52.     PLAINTIFF is an African-American male and, therefore, a member of a protected

class within the meaning of the aforementioned Government Code sections. At all relevant times

herein, PLAINTIFF competently performed his job duties and responsibilities as reasonably

expected by DEFENDANTS.

53.     PLAINTIFF was an employee of DEFENDANTS and was subjected to unwanted

harassing conduct because he is African-American, including using racist language toward

PLAINTIFF, failing to investigate PLAINTIFF'S complaint, and otherwise treating him less

favorably than non-African-American employees. This conduct was severe and pervasive. A

reasonable person in PLAINTIFF'S position would have considered the work environment to be

hostile, just as PLAINTIFF did.

54.     This harassment included unlawful conduct by PLAINTIFF'S coworkers,

1  supervisor, senior management, and further, DEFENDANTS knew or should have known of all

2  of the harassing conduct and failed to take immediate and appropriate corrective action, thereby

3  ratifying DEFENDANTS actions.

4       55.    As a proximate result of DEFENDANTS' unlawful acts, practices, and omissions,

5  PLAINTIFF has suffered monetary damages, humiliation, mental anguish, and physical and

6  emotional distress, in an amount subject to proof at trial. PLAINTIFF claims such amount as

7  damages together with prejudgment interest thereon pursuant to California Civil Code §§ 3287,

8  3288, and/or any other applicable provision providing for prejudgment interest.

9       56.    By engaging in the aforementioned unlawful acts, practices, and omissions,

10  DEFENDANTS intended to cause injury to PLAINTIFF. DEFENDANTS' conduct was reckless,

11  malicious, and despicable, and was carried on with a conscious and willful disregard of the rights

12  and safety of others. Therefore, an award of punitive damages, sufficient to punish

13  DEFENDANTS and to serve as an example to deter DEFENDANTS from similar conduct in the

14  future, should be made. PLAINTIFF claims such amount as damages to be determined at trial.

15  PLAINTIFF claims such amount as damages together with prejudgment interest thereon pursuant

16  to California Civil Code §§ 3287, 3288 and/or any other applicable provision providing for

17  prejudgment interest.

18       57.    Additionally, PLAINTIFF seeks an award of reasonable attorneys' fees and costs

19  against DEFENDANTS pursuant to the California Fair Employment and Housing Act.

20  **SECOND CAUSE OF ACTION**

21  **Race Discrimination in Violation of the**

22  **California Fair Employment and Housing Act**

23  **[Cal. Gov't Code § 12940(a)]**

24  **(Against DEFENDANT TESLA and DOES 1 through 50)**

25       58.    PLAINTIFF incorporates herein by specific reference, as though fully set forth, the

26  factual allegations in the foregoing paragraphs.

27       59.    At all relevant times herein, California Government Code § 12940 was in full

28  force and effect and was binding on DEFENDANTS.

60.    As set forth above, DEFENDANTS' acts and omissions constitute violations of California Government Code § 12940.  PLAINTIFF has timely filed a complaint against DEFENDANTS with the California Department of Fair Employment and Housing and received a Right to Sue letter on January 30, 2025.

61.    PLAINTIFF is an African-American male and, therefore, a member of a protected class within the meaning of the aforementioned Government Code sections.  At all relevant times herein, PLAINTIFF competently performed his job duties and responsibilities as reasonably expected by DEFENDANTS.

62.    During   the   course   of   PLAINTIFF'S   employment,   as   alleged   above, DEFENDANTS committed discriminatory acts on the basis of PLAINTIFF'S race, among other things.

63.    PLAINTIFF believes, and thereon alleges, that his race was a motivating factor in DEFENDANTS' wrongful employment actions and practices, including but not limited to failing and/or denying to promote PLAINTIFF, retaliating against PLAINTIFF after complaints of racial discrimination and harassment, failing to investigate PLAINTIFF'S complaint, and otherwise treating him less favorably than non-African-American employees.

64.    In perpetrating the above-described actions, DEFENDANTS, directly and through their agents and supervisors, discriminated against PLAINTIFF on the basis of his race, and terminated him because of his race, in violation of the California Fair Employment and Housing Act, Government Code § 12940(a). PLAINTIFF was treated differently because he is African-American.  DEFENDANTS knew or should have known of the discriminatory conduct toward PLAINTIFF and failed to take immediate and appropriate corrective action.

65.    As a proximate result of DEFENDANTS' unlawful acts, practices, and omissions, PLAINTIFF has suffered monetary damages, humiliation, mental anguish, and physical and emotional distress, in an amount subject to proof at trial. PLAINTIFF claims such amount as damages together with prejudgment interest thereon pursuant to California Civil Code §§ 3287, 3288, and/or any other applicable provision providing for prejudgment interest.

66.    By engaging in the aforementioned unlawful acts, practices, and omissions, and by

1   ratifying such acts, practices, and omissions, DEFENDANTS intended to cause injury to
2   PLAINTIFF. DEFENDANTS' conduct was reckless, malicious, and despicable, and was carried
3   on with a conscious and willful disregard of the rights and safety of others. Therefore, an award
4   of punitive damages, sufficient to punish DEFENDANTS and to serve as an example to deter
5   them from similar conduct in the future, should be made. PLAINTIFF claims such amount as
6   damages to be determined at trial, together with prejudgment interest thereon pursuant to
7   California Civil Code §§ 3287, 3288 and/or any other applicable provision providing for
8   prejudgment interest.

9       67.    Additionally, PLAINTIFF seeks an award of reasonable attorneys' fees and costs
10  against DEFENDANTS, and each of them, pursuant to the California Fair Employment and
11  Housing Act.

## THIRD CAUSE OF ACTION

### Retaliation for Opposing Racial Discrimination and Harassment in Violation of the

### California Fair Employment and Housing Act

### [Cal. Gov't Code § 12940(h)]

### (Against DEFENDANT TESLA and DOES 1 through 50)

17      68.    PLAINTIFF incorporates herein by specific reference, as though fully set forth, the
18  factual allegations in the foregoing paragraphs.

19      69.    At all relevant times herein, California Government Code § 12940 provided that
20  "[i]t is an unlawful employment practice . . . (h) [f]or any employer . . . to discharge, expel, or
21  otherwise discriminate against any person because the person has opposed any practices
22  forbidden under this part or because the person has filed a complaint, testified, or assisted in any
23  proceeding under this part."

24      70.    As set forth above, DEFENDANTS' acts and omissions constitute violations of
25  California Government Code § 12940(h) ), in that it continued to subject PLAINTIFF to
26  intolerable working conditions following his complaints about DEFENDANTS' conduct toward
27  him and failed to properly investigate his complaints about him. TESLA failed to take all
28  reasonable steps necessary to prevent such harassment from occurring. PLAINTIFF has timely

1    filed a complaint against DEFENDANTS with the California Department of Fair Employment

2    and Housing and received a Right to Sue letter on January 30, 2025.

3        71.    PLAINTIFF opposed DEFENDANTS' discriminatory and harassing actions on

4    the basis of race toward himself.

5        72.    After PLAINTIFF opposed DEFENDANTS' discriminatory and harassing actions,

6    as alleged above, DEFENDANTS subjected PLAINTIFF to adverse employment actions,

7    including failing and/or denying to promote PLAINTIFF, failing to investigate his complaint of

8    racial discrimination and harassment, and failing to discipline the harassers or take any corrective

9    action.

10       73.    PLAINTIFF believes, and thereon alleges, that his opposition to discriminatory,

11   harassing and/or retaliatory actions on the basis of race was a substantial motivating factor in

12   DEFENDANTS' wrongful employment actions and practices, including but not limited to

13   DEFENDANTS' termination of PLAINTIFF'S employment at TESLA. Such discrimination is in

14   violation of Government Code § 12940(h) and has resulted in damage and injury to PLAINTIFF

15   as alleged herein.

16       74.    As a proximate result of DEFENDANTS' unlawful acts, practices, and omissions,

17   PLAINTIFF has suffered monetary damages, humiliation, mental anguish, and physical and

18   emotional distress, in an amount subject to proof at trial. PLAINTIFF claims such amount as

19   damages together with prejudgment interest thereon pursuant to California Civil Code §§ 3287,

20   3288, and/or any other applicable provision providing for prejudgment interest.

21       75.    By engaging in the aforementioned unlawful acts, practices, and omissions, and by

22   ratifying such acts, practices, and omissions, DEFENDANTS intended to cause injury to

23   PLAINTIFF. DEFENDANTS' conduct was reckless, malicious, and despicable, and was carried

24   on with a conscious and willful disregard of the rights and safety of others. Therefore, an award

25   of punitive damages, sufficient to punish DEFENDANTS and to serve as an example to deter

26   them from similar conduct in the future, should be made. PLAINTIFF claims such amount as

27   damages to be determined at trial, together with prejudgment interest thereon pursuant to

28   California Civil Code §§ 3287, 3288 and/or any other applicable provision providing for

1    prejudgment interest.

2        76.    Additionally, PLAINTIFF seeks an award of reasonable attorneys' fees and costs

3    against DEFENDANTS, and each of them, pursuant to the California Fair Employment and

4    Housing Act.

5                              **FOURTH CAUSE OF ACTION**

6    **Failure to Prevent Racial Discrimination, Harassment, or Retaliation from Occurring in**

7                **Violation of the California Fair Employment and Housing Act**

8                              **[Cal. Gov't Code § 12940(k)]**

9                    **(Against DEFENDANT TESLA and DOES 1 through 50)**

10        77.    PLAINTIFF incorporates herein by specific reference, as though fully set forth, the

11    factual allegations in the foregoing paragraphs.

12        78.    At all relevant times herein, California Government Code § 12940 provided that

13    "[i]t is an unlawful employment practice . . . (k) [f]or an employer . . . to fail to take all reasonable

14    steps necessary to prevent discrimination and harassment from occurring."

15        79.    As set forth above, DEFENDANTS' acts and omissions constitute violations of

16    California Government Code § 12940(k) in that they failed to take necessary steps to prevent

17    harassment, and retaliation. PLAINTIFF has timely filed a complaint against DEFENDANTS

18    with the California Department of Fair Employment and Housing and received a Right to Sue

19    letter on January 30, 2025.

20        80.    PLAINTIFF is an African-American male and, therefore, a member of a protected

21    class within the meaning of the aforementioned Government Code sections. At all relevant times

22    herein, PLAINTIFF competently performed his job duties and responsibilities as reasonably

23    expected by DEFENDANTS.

24        81.    During the course of PLAINTIFF'S employment, as alleged above,

25    DEFENDANTS subjected PLAINTIFF to discrimination, harassment, and/or retaliation on the

26    basis of PLAINTIFF'S race and because he objected to these discriminatory practices toward

27    himself.

28        82.    As set forth above, DEFENDANTS failed to take all reasonable steps necessary to

1    prevent racial discrimination, harassment and/or retaliation from occurring, in violation of the

2    California Fair Employment and Housing Act, Government Code § 12940(k).

3       83.    As a proximate result of DEFENDANTS' unlawful acts, practices, and omissions,

4    PLAINTIFF has suffered monetary damages, humiliation, mental anguish, and physical and

5    emotional distress, in an amount subject to proof at trial. PLAINTIFF claims such amount as

6    damages together with prejudgment interest thereon pursuant to California Civil Code §§ 3287,

7    3288, and/or any other applicable provision providing for prejudgment interest.

8       84.    By engaging in the aforementioned unlawful acts, practices, and omissions, and by

9    ratifying such acts, practices, and omissions, DEFENDANTS intended to cause injury to

10   PLAINTIFF. DEFENDANTS' conduct was reckless, malicious, and despicable, and was carried

11   on with a conscious and willful disregard of the rights and safety of others. Therefore, an award

12   of punitive damages, sufficient to punish DEFENDANTS and to serve as an example to deter

13   them from similar conduct in the future, should be made. PLAINTIFF claims such amount as

14   damages to be determined at trial, together with prejudgment interest thereon pursuant to

15   California Civil Code §§ 3287, 3288 and/or any other applicable provision providing for

16   prejudgment interest.

17      85.    Additionally, PLAINTIFF seeks an award of reasonable attorneys' fees and costs

18   against DEFENDANTS, and each of them, pursuant to the California Fair Employment and

19   Housing Act.

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28   //

## PRAYER FOR RELIEF

**WHEREFORE**, PLAINTIFF respectfully prays for relief against DEFENDANTS and DOES 1 through 50, inclusive, and each of them, as follows:

1.　　For compensatory and punitive damages in amounts to be ascertained at trial;

2.　　For reasonable attorneys' fees and costs pursuant to California Labor Code §§ 1194, 2699, 2802, California Civil Code §§ 52, 1021.5, California Government Code § 12960, and any other applicable provisions providing for attorneys' fees and costs;

3.　　For declaratory relief; and

4.　　For such further relief that the Court may deem just and proper.

DATED: October 15, 2025

Respectfully submitted,

**MATERN LAW GROUP, PC**

By: _____

Matthew J. Matern
Joshua D. Boxer
Attorneys for Plaintiff
IKE AMUZIE

MATERN LAW GROUP
2101 E. EL SEGUNDO
BLVD, STE 403
EL SEGUNDO, CA 90245

19                                    COMPLAINT

## DEMAND FOR JURY TRIAL

PLAINTIFF hereby demands a jury trial with respect to all issues triable of right by jury.

DATED: October 15, 2025

Respectfully submitted,

**MATERN LAW GROUP, PC**

By: _____

Matthew J. Matern
Joshua D. Boxer
Attorneys for Plaintiff
IKE AMUZIE